

**ORDERED in the Southern District of Florida on July 6, 2012.**

A. Jay Cristol, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

SAGAMORE PARTNERS, LTD.,

Debtor.
_____/

Case No. 11-37867-AJC

Chapter 11

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART OBJECTION OF JPMCC 2006-LDP7 MIAMI BEACH LODGING, LLC TO MELAND RUSSIN & BUDWICK, P.A.'S FIRST INTERIM FEE APPLICATION**

This matter came before the Court for hearing on March 8, 2012 at 2:00 p.m. (the "Hearing"), upon *Meland Russin & Budwick, P.A.'s First Interim Fee Application* [ECF No. 96] (the "Interim Fee Application") and the *Objection by JPMCC 2006-LDP7 Miami Beach Lodging, LLC to Meland Russin & Budwick, P.A.'s First Interim Fee Application* [ECF No. 113]

MIAMI 3145809.3 72496/37043

1

(the "Objection") filed by secured creditor and first-mortgage holder JPMCC 2006-LDP7 Miami Beach Lodging, LLC ("Secured Lender").

By the Interim Fee Application, Meland Russin & Budwick, P.A. ("MRB") (a) seeks interim allowance of $265,076.50 in fees and $5,670.85 in costs, (b) requests authority to apply $105,815.75 from its pre-petition fee retainer account and $5,670.85 from its $10,000.00 pre-petition expense retainer account, and (c) requests payment from Debtor Sagamore Partners, Ltd. (the "Debtor") of the "remainder of the fees and costs awarded consistent with the Interim Cash Collateral Orders [ECF Nos. 21, 53, 59 and 71], and any additional cash collateral orders entered by the Court, and carve-outs, and approved Budgets as may have been further amended/modified."

By the Objection, Secured Lender objects to the use of its cash collateral for the payment of fees and costs incurred in connection with the adversary proceeding brought by the Debtor against Secured Lender (Case No. 11-3122-AJC) (the "Adversary Proceeding") and, in addition, contends that MRB expended excessive amounts of time in commencing the Adversary Proceeding and in addressing the Debtor's failure to comply with provisions of the First Interim Cash Collateral Order [ECF No. 21]. Secured Lender also raises certain duplicate time entries, time incurred by a partner who is minimally involved in the Debtor's case, and failure of MRB to adhere to the Court's *Guidelines for Fee Applications*.

At the Hearing and in subsequent discussions, MRB and Secured Lender reached agreement regarding certain of the issues raised in the Objection, which resulted in the entry of the *Order Approving, In Part, Meland Russin & Budwick, P.A.'s First Interim Fee Application* [ECF No. 176] (the "Interim Fee Order"). The Interim Fee Order, by agreement, (a) allowed on an interim basis a total of $143,831.65, consisting of $138,160.80 in fees (80% of $172,701.00)

and $5,670.85 in costs, (b) authorized MRB to apply its entire fee retainer of $105,815.75 and $5,670.85 of its $10,000.00 prepetition cost retainer, and (c) authorized payment to MRB of the balance of the fees awarded by the Interim Fee Order of $32,345.05, solely in accordance with extant cash collateral orders.[1] The Interim Fee Order also provided for the withdrawal of the Objection by Secured Lender[2] to all issues other than the $92,375.50 in fees incurred by MRB in connection with the Adversary Proceeding (the "Adversary Proceeding Fees").

Accordingly, after entry of the Interim Fee Order, the sole remaining issues for determination by this Court are whether the Debtor is authorized to use Secured Lender's cash collateral to pay the Adversary Proceeding Fees over Secured Lender's Objection and whether the Adversary Proceeding Fees sought by MRB in its Interim Fee Application are, in any event, reasonable.

## BACKGROUND

The Debtor is the owner and operator of the Sagamore Hotel on Miami Beach (the "Property"). The Debtor entered into a loan in the principal amount of $31,500,000 on or about March 24, 2006 (the "Loan"), which Loan is evidenced by an Amended and Restated Promissory Note. The Loan is secured, *inter alia*, by a first priority mortgage on the Property (the "Mortgage"). Secured Lender is the current holder of the Loan.[3]

*Litigation Between Secured Lender and the Debtor*

On December 7, 2009, following Sagamore's default on the Loan, Secured Lender filed its Complaint for Foreclosure of Mortgage and Security Interest, and for Damages (the "State

---

[1] The Ninth Interim Cash Collateral Order [ECF No. 178] budgeted for the consensual payment of $32,345.05 for approved legal fees, subject to the terms and conditions set forth therein.
[2] The Interim Fee Order expressly preserves all objections that may be raised in connection with an application for final approval of the amounts addressed by the Interim Fee Order. Interim Fee Order at ¶ 6.
[3] The Debtor is challenging the validity, priority, and extent of Secured Lender's liens and security interests in the Adversary Proceeding; however it is unnecessary for the Court to adjudicate those claims in the context of the Interim Fee Application or the Objection.

Court Complaint") in the Eleventh Judicial Circuit Court in and for Miami-Dade County (the "State Court").[4]  *See* State Court Action Docket Sheet, [ECF No. 56 at Ex. A] (the "State Court Docket").

The Debtor and its principal, Martin W. Taplin, who guaranteed the Loan, asserted counterclaims against Secured Lender (the "Counterclaims") and third party claims (the "Third Party Claims") in the State Court Action against , among others, special servicer LNR Partners, LLC ("LNR"), Arbor Commercial Mortgage, LLC, Nomura Credit & Capital, Inc., Wells Fargo Bank, as Indenture Trustee, U.S. Bank, as successor Indenture Trustee, and Berkadia Commercial Mortgage, LLC, the master servicer (collectively, the "Lender Parties").  *See* State Court Docket.

It appears uncontested that the Counterclaims and Third Party Claims brought by the Debtor against Secured Lender, LNR and the Lender Parties included fraudulent inducement, civil conspiracy, violations of Florida's Deceptive and Unfair Trade Practices Act, promissory estoppel, negligent misrepresentation, tortious interference with a prospective economic advantage and business relationship, breach of a fiduciary relationship, breach of the implied covenant of good faith and fair dealing, breach of contract, and a request for declaratory judgment.

Secured Lender moved for summary judgment in the State Court Action and a hearing was set for October 13, 2011.[5]  The State Court also set the foreclosure claims against the Debtor for a three-week non-jury trial commencing November 21, 2011, if the summary judgment was

---

[4] The state court action is styled *JPMCC 2006-LDP7 MIAMI BEACH LODGING LLC, et al. v. SAGAMORE PARTNERS, LTD*, Case No. 09-88077-CA-32 (the "State Court Action") and is currently stayed solely as to the Debtor.
[5] *See* State Court Action Docket Sheet.

not granted.[6] However, on October 6, 2011, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition") and, as a consequence, the State Court Action was stayed as to the Debtor.

On December 3, 2011, Secured Lender moved for relief from the automatic stay in order to continue to prosecute the State Court Action against the Debtor [ECF No. 56] (the "Stay Relief Motion"). In response, the Debtor objected to the relief sought and argued that it should be permitted to commence an adversary proceeding against Secured Lender as "the Bankruptcy Court is the proper and most efficient forum to adjudicate the adversary proceeding." [ECF No. 63]. The Court denied the Stay Relief Motion. [ECF No. 74].

On December 27, 2011, the Debtor commenced the Adversary Proceeding by filing its initial complaint against the Lender Parties [Adversary Proceeding ECF No. 1] (the "Initial Complaint"), which was subsequently amended by the Debtor's Amended Complaint [ECF No. 28] (the "Complaint").

Like the Counterclaims and Third Party Claims in the State Court Action, the Complaint attempts to state claims for fraudulent inducement, violations of Florida's Deceptive and Unfair Trade Practices Act, promissory estoppel, negligent misrepresentation, tortious interference with a prospective economic advantage and business relationship, breach of a fiduciary relationship, breach of the implied covenant of good faith and fair dealing, breach of contract, and a request for declaratory judgment. Secured Lender contends that these claims are virtually identical to the Counterclaims and Third Party Claims raised in the State Court.

In addition the Complaint includes (i) a two-paragraph objection to Secured Lender's proof of claim (Count II); (ii) a four-paragraph request for equitable subordination of Secured Lender's claim (Count XI); and (iii) a request for a temporary restraining order prohibiting

---

[6] *Id.*

actions against Taplin, individually, which seeks no relief for the Debtor (Count XII).[7]

## DISCUSSION AND ANALYSIS

*<u>Sagamore Is Not Authorized to Use Cash Collateral to Pay the Adversary Proceeding Fees</u>*

As set forth above, the Interim Fee Application seeks the allowance and payment of $92,375.50 in fees that MRB incurred in connection with the Adversary Proceeding. Should the Court allow the Adversary Proceeding Fees over the Objection of Secured Lender, the Debtor presently has no ability to pay MRB's fees (or any other expenses) unless the Debtor is permitted to use the Secured Lender's cash collateral. Sections 363(c)(2) and (e) of the Bankruptcy Code prohibit the Debtor from using Secured Lender's cash collateral unless Secured Lender consents or such use is authorized by the Court after a determination that Secured Lender is adequately protected.

To date, pursuant to Section 363(c)(2) of the Bankruptcy Code, the Debtor and Secured Lender have serially agreed to the entry of consensual cash collateral orders,[8] each of which has authorized the Debtor to use Secured Lender's cash collateral during a specified period of time solely in accordance with a budget approved by Secured Lender.[9]

Each of the Interim Cash Collateral Orders expressly provides that the Debtor's authority to use Secured Lender's cash collateral terminates automatically upon the occurrence of a Termination Event which includes, among other things, the occurrence of the Outside Date.[10] Upon the occurrence of a Termination Event (including the Outside Date), the Debtor's authorization to use cash collateral under the applicable Interim Cash Collateral Order

---

[7] Count IV of the Adversary Complaint seeks declaratory relief as to the enforceability of Taplin's personal guaranty. This count, which is for the benefit of Taplin rather than the Debtor, was apparently raised by the Debtor in the State Court action as an affirmative defense to the State Court Complaint.
[8] ECF Nos. 21, 53, 59, 71, 97, 104, 133, 152 & 178 (collectively, the "<u>Interim Cash Collateral Orders</u>").
[9] Interim Cash Collateral Orders at ¶ 2.
[10] Interim Cash Collateral Orders at ¶ 3.

terminates. Thus far, after the expiration of each applicable Interim Cash Collateral Order, the Debtor has obtained Secured Lender's consent to a replacement Interim Cash Collateral Order, which provides new authority to use Secured Lender's cash collateral, albeit only pursuant to a new budget which is approved by Secured Lender and only until the occurrence of a Termination Event under the replacement order, including occurrence of the applicable Outside Date.

MRB contends that Secured Lender had implicitly consented to the payment of up to $120,000 in professional fees by approving the budget applicable to the Fifth Interim Cash Collateral Order that included a line item for legal fees in the amount of $120,000.[11] Hr'g Tr. at 22:11-23:11.

The Secured Lender, however, contends that (a) in the case of professional fees, Secured Lender's approval of a budget which includes such fees does not act to waive or bar Secured Lender's right to object to any such fees, the same being expressly subject to "notice, hearing and approval of this Court";[12] and (b) each of the budgets are "use it or lose it" cash budgets and whatever is not spent thereunder by the Debtor prior to the occurrence of a Termination Event (including the Outside Date) cannot be requisitioned by the Debtor in a subsequent Interim Period unless included in the budget applicable to such subsequent interim period after notice, hearing and approval of the fees by the Court. H'rg Tr. at 15:3-15:18 & 35:13-36:6. Accordingly, Secured Lender contends that the inclusion of professional fees in the budget applicable to the Fifth Interim Cash Collateral Order was subject to Secured Lender's right to object thereto, and the failure to obtain the Court's approval of such fees before the Outside Date under the Fifth Interim Cash Collateral Order necessitated that the Debtor include such fees in a subsequent budget, subject to Secured Lender's right to object thereto and to approval of the

---

[11] The version of the Fifth Interim Cash Collateral Order that was docketed [ECF No. 97] does not include the budget, however, the parties do not appear to dispute its contents, only their significance.
[12] Interim Cash Collateral Orders at ¶ 7.

Court after notice and hearing.

The Court concurs with the Secured Lender. The Interim Cash Collateral Orders expressly and unambiguously provide "[t]he Debtor's authority to use the Cash Collateral shall terminate (A) automatically upon the occurrence of a Termination Event. . . ." Interim Cash Collateral Orders at ¶ 2. Upon the occurrence of a Termination Event, the budget applicable to the terminated Interim Cash Collateral Order is of no further force and effect.

### MRB Has Not Established the Reasonableness of the Adversary Proceeding Fees

By the Interim Fee Application, MRB seeks the allowance and payment of $92,375.50 in fees that MRB incurred in preparing and filing the Initial Complaint.[13] Secured Lender objects to those fees as excessive in light of the substantial similarity between the Adversary Complaint and the matters raised in the Counterclaims and Third Party Claims and affirmative defenses asserted in the State Court Action. Objection at ¶¶ 6-8.

The Bankruptcy Code assigns to bankruptcy courts a comprehensive duty to review fees in a bankruptcy case. *Dery v. Cumberland Casualty & Surety Co. (In re 5900 Assocs., Inc.),* 468 F.3d 326, 330 (6th Cir. 2006). Within the confines of their review, bankruptcy courts have broad discretion in determining the appropriate fee award to professionals serving the estate. *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir. 1990). In making such determination, section 330(a)(3) of the Bankruptcy Code refers to the court's duty to consider "the nature, the extent, and the value of such services" and "whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed" and whether the services were "necessary . . . or beneficial." 11 U.S.C. § 330(a)(3)(C) & (D).

---

[13] Less than 5 percent of the requested Adversary Proceeding Fees were incurred after the filing of the Initial Complaint on December 27, 2011.

MRB states that it devoted 306.5 hours of attorney time to drafting and preparing the Initial Complaint, along with "significant attention to strategy, discovery, and overall litigation issues as well as significant discussions with the Debtor and defendants regarding scheduling issues and overall status of the case."[14] Of the twelve counts asserted, eight counts are alleged by Secured Lender to be either identical or substantially similar to the Counterclaims, Third Party Claims, or affirmative defenses raised to the State Court Complaint.[15] MRB, however, appears to dispute the similarity between the pleadings in the State Court Action and the Complaint by claiming that MRB "added" to the State Court Action "dramatically". Hr'g Tr. 29:20-24 (Mar. 8, 2012).

Professionals are not entitled to compensation from a bankruptcy estate for legal services not necessary to the administration of a bankruptcy case. *See G.W.C. Financial & Ins. Services, Inc.*, 8 B.R. 122, 125 (Bankr. C.D. Cal. 1981) ("reasonable compensation is not necessarily gauged by the legal services actually rendered, but rather by the legal services that are reasonably necessary under the circumstances of a case"); s*ee also In re Bush*, 131 B.R. 364 (Bankr.W.D. Mich. 1991).

Here, the Court is concerned by the sheer magnitude of the fees requested by MRB in connection with the preparation of the Initial Complaint and the commencement of the Adversary Proceeding. MRB represented the Debtor in the State Court Action. Even if the advent of bankruptcy precipitated a new "learning curve," it provided to be of no benefit to the estate since MRB has been replaced by another attorney as counsel in the Adversary

---

[14] Interim Fee Application at ¶ H.

[15] Count III (fraudulent inducement and breach of duty); Count IV (declaratory judgment with respect to an unenforceable springing recourse provision in an indemnity and guaranty agreement); Count V (violation of Florida's Deceptive and Unfair Trade Practices Act; Count VI (promissory estoppel); Count VII (breach of duty and negligent misrepresentation); Count VIII (tortious interference with prospective economic advantage and business relationship; Count IX (breach of covenant of good faith and fair dealing); and Count X (declaratory judgment with respect to the loan remaining in good standing).

Proceeding.[16] Moreover, while the Debtor advised the Court that permitting it to proceed with the Adversary Proceeding rather than granting Secured Lender stay relief to proceed in the State Court would be more efficient and economical,[17] had stay relief been granted the Adversary Proceeding Fees would not have been incurred at all. The inclusion of additional counts objecting to Secured Lender's proof claim (Count II), seeking equitable subordination (Count XI), and requesting a temporary injunction for the benefit of Taplin (Count XII)[18] with a few new paragraphs in the Complaint does not justify over $92,000 of fees.

It is incumbent upon an attorney seeking compensation from a bankruptcy court to demonstrate that its fee request is reasonable in light of the services provided. *See Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 267-68 (1941). In light of the colorable objections raised by the Secured Lender, the Court concludes that MRB has failed to make such a showing in respect of the Adversary Proceeding Fees.

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Secured Lender's Objection is SUSTAINED as to the Adversary Proceeding Fees and approval of that portion of the Interim Fee Application [seeking interim allowance of the Adversary Proceeding Fees] is DENIED WITHOUT PREJUDICE.

### 

---

[16] ECF Nos. 158 & 171.

[17] ECF No. 63.

[18] With respect to Count XII seeking a temporary injunction for actions against Mr. Taplin, the Court holds that the fees related to such relief are not chargeable to the Debtor's estate. Count XII only serves to benefit the Debtor's principal, and does not satisfy the reasonableness standard under section 330(a). *See In re Office Products of America*, 136 B.R. 964, 972 (Bankr. W.D. Tex. 1992) ("if the debtor is charged for services which benefit only the debtor's principals, the charges for those services exceed the reasonable value of those services to the debtor, and should not be allowed").